MARTIN, Appellant v. MARTIN.

A husband cannot convey land by deed *directly* to his wife.

The appellee filed his petition in the Probate Court, for partition of the real estate of which his father died seized, and the Judge thereupon decreed that partition be made. From this decree the mother of the petitioner appealed to this Court, and filed the following as the cause of her appeal :

" Because *Ezekiel Martin* her husband, on the 20th day of " *June* 1808, being then in full life but since deceased, by his " deed of bargain and sale, with general warranty, duly ac- " knowledged *July* 28, 1818, and recorded, for the considera- " tion of four hundred dollars therein acknowledged to have " been received of said *Mary*, did give, grant, bargain, sell and " convey to said *Mary* and her heirs and assigns forever in fee, " the land described in the petition aforesaid, by force of which " deed she became and still is sole seized and possessed of said " land in her own demesne as of fee," &c.

And the question was upon the effect of this deed.

Martin v. Martin.

*Greenleaf,* for the appellant.

No other reason is given against the validity of a deed of conveyance from the husband *directly* to the wife, but this, that they cannot contract with each other, *being in law but one person.*

But this maxim is not universally true, and the reasons on which it is founded do not apply to cases like the present. The incapacity of a *feme covert* arises not from her want of skill and judgment, as in the case of an infant; but, 1st, from the husband's right to her person and society, which would be violated if a creditor could arrest and take her away;—and 2d, from his right to her property.

1. She may sue and be sued as a *feme sole* where the husband is banished; *Co. Lit.* 432. *b.*—or has abjured the realm for felony;—*Case of the wife of Weyland,* cited in *Co. Lit.* 133. *a.*—or is an alien enemy;—*Duchess of Mazarine's case,* 1 *Salk.* 116. 1 *Ld. Raym.* 147. 2 *Salk.* 646. She may contract with her husband to live separately, and he cannot compel her to live with him again. *Mrs. Lester's case,* 8 *Mod.* 22. *Rex. v. Lister,* 1 *Stra.* 478. *Rex v. Mead,* 1 *Burr.* 542. For in these cases he is understood to have renounced his marital right to her person.

2. Where the husband covenanted that she might enjoy, to her own use, her estates real and personal, and that he would join her in the surrender of her copyholds, her surrender *without him* was holden good. *Compton v. Collinson,* 1 *H. Bl.* 334. 2 *Atk.* 511. Husband gave his wife a note of 3000*l.* to be paid if he should ever again treat her ill; and he did so, and the note was decreed in Chancery to be paid. *Reeve Dom. Rel.* 94 cites. 2 *Ventr.* 217. 2 *Vern.* 67. But even his right to her property has its limits. She may take separate property by devise; and if no trustees be appointed by the will, the husband shall be trustee for her use. *Bennet v. Davis,* 2 *P. Wms.* 316. So of a legacy of stock;—*Rich v. Cockell,* 9 *Ves. jr.* 369;—So of a gift from the husband to the wife. *Moore v. Freeman, Bunb.* 205. And she may even have a decree against him in respect of such estate. *Cecil v. Juxon,* 1 *Atk.* 278. She may accept a gift of personal ornaments from her husband. She may lend money to him, which his executors shall be bound to repay. *Slanning v. Style,* 3. *P. Wms.* 334. *ib.* 337. And she may bequeath her

own personal property, of which she was endowed *ad ostium ecclesiæ*. *Reeve* 145–150. and authorities there cited. The reason of all these cases applies with as much force at law as in equity, viz. that the husband's right to her property is not thereby affected.

The wife may also act *in auter droit* as a *feme sole*. She may be an attorney ;—*Co. Lit.* 52. *a.*—or a guardian; and her receipt separate from her husband is good. *Reeve* 121. cites 13. *Ves.* 517. So if she have power to dispose of lands to whom she pleases, she may convey without her husband,—*Daniel v. Upley*, *W. Jon.* 137. cited in *note* 6 to *Co. Lit.* 112. *a.*—because, as *Mr. Hargrave* observes, " he can receive no prejudice from her acts." She may in such case convey *to* her husband, *Reeve* 120. She may be an executor—and if a *feme sole* be appointed sole administrator, and take husband, he becomes joint administrator ; but she alone may perform any acts which a joint administrator may perform. 1 *Com. Dig. Administration (D.)*— She may also release her dower by her separate deed, subsequent to the husband's sale of the estate. *Fowler v. Shearer*, 7 *Mass.* 14.

From these authorities this general principle is deducible,— that the wife is to be considered capable to act as a *feme sole, wherever the marital right to her person is not infringed,*—and *wherever the estate of the husband can receive no prejudice from her acts.*

Now what prejudice can his estate receive, or what right of his can possibly be infringed, by considering her as capable to take directly from him by deed ? He may convey to trustees for her use. He may convey to a third person, and this person, *at the same time*, in pursuance of a previous agreement, may convey to the wife, with the husband's assent, and it will be good *at law* against him and his heirs. And yet divers deeds thus executed, are to be taken as *parts of one entire transaction*. *Holbrook v. Finney*, 4 *Mass.* 566. *Hubbard v. Cummings*, *ante.* p. 11. He may covenant to stand seized to her use ; and the statute of uses 27. *Hen.* 8. vests the possession in her. *Co. Lit.* 112. *a.* And in all these cases the estate descends, not to his heirs, but to her own. The coverture may well operate to suspend any remedy on the covenants in a deed from the husband

Martin *v.* Martiu.

to his wife, during the life of the husband ; and this for the pre-
servation of domestic peace, and of his right to her person, which
would be infringed if she could imprison him ; but this would
not affect her capacity to take.

*E. Whitman* for the appellee.

It is a sufficient answer to the argument on the other side
to say that the law of the land is otherwise. It has ever been
considered as law here, from the first settlement of the country,
that the wife was incapable to take by direct conveyance from
her husband ; and conveyances have been regulated according-
ly. Indeed the intervention of trustees on all occasions proves
that estates cannot be thus conveyed without them. No instance
can be found of any attempt to support a deed like this. The
same has been the common law of *England* from time imme-
morial. *Lit. sec.* 168. *Co. Lit.* 112. *a.*

And it is founded in good reason. It frees the husband from
the constant importunity of the wife while he is in health, and
from the effect of her influence over his mind when it becomes
enfeebled by disease. If it were otherwise, this barrier which
the presence of trustees interposes would be broken down, and
every artful woman might disinherit the children of a former
wife at her pleasure.

*Greenleaf,* in reply.

The argument arising from the presence of trustees, as the
protectors of a weak husband against the arts of an ambitious
or an avaricious wife, is of little weight in the cause. Pliant
trustees are as easily found as imbecile husbands ; and a wife,
artful or eloquent enough to obtain her husband's consent to
convey, will always be able to introduce some convenient rela-
tive or friend of her own as a trustee.

As to the course of decisions, no adjudged case directly to this
point is to be found in the books. *Dicta,* indeed, to this effect,
are not infrequent ; but if the *reason* of the law does not support
them, why should they be treated as law ? If the principle now
contended for could operate to unsettle the titles to any estates,
or to disturb vested rights, there might be good reason to reject
it, and to adhere even to harmless errors, rather than do mis-
chief by correcting them. But it does not go to disturb titles,
it shakes no established principles or decisions, it abridges no

rights ;—on the contrary it vindicates the consistency of the law on this subject, and takes from it the reproach to which it is otherwise exposed.

MELLEN C. J. afterwards delivered the opinion of the Court as follows.

The only question presented in this case is whether the deed from *Ezekiel Martin,* the late husband of the appellant, directly to *her* is a legal conveyance by which the estate passed from *him* to *her.* If any principle of *Common Law* is settled and perfectly at rest, it seems to be this, that a husband cannot convey an estate by deed to his wife. The appellant's counsel has not attempted to shew any authority shaking this principle : and even the learned author of the Treatise on Domestic Relations— though an able advocate for the rights of married women in regard to the control or disposition of property belonging to them,—does not contend that such a deed would be an operative conveyance : on the contrary he admits it would not. See pages 89. 90.—The numerous cases cited by the counsel in support of the deed, are principally *Chancery decisions ;* and those which are *not such,* have reference to questions totally different from that now under consideration : Neither class of cases, then, can be relied upon as authorities, in the determination of this cause. It can be of no use for the Court to disturb or attempt to disturb a legal principle, which has never before been agitated in our Courts or till very lately been even doubted. It is not necessary for us to answer the inquiry which has been made, " why a deed from a husband to his wife should " not be a valid conveyance ?" in any *other* manner than by observing that the law of the land declares such a deed to be a mere nullity. Accordingly, without a particular examination of the authorities cited on either side, we *affirm* the decree of the Judge of Probate and direct the record and proceedings to be remitted to the Probate Court, that such further proceedings may be had therein as the law requires.